UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DONALD RAY HALL,                                              Plaintiff,

v.                                          Civil Action No. 3:16-cv-P476-DJH

LADONNA THOMPSON *et al*.,                                   Defendants.

* * * * *

### MEMORANDUM OPINION AND ORDER

Plaintiff Donald Ray Hall, a prisoner proceeding *in forma pauperis*, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1).  Subsequent to filing the complaint, Plaintiff filed a motion to amend the complaint (DN 6).  The motion to amend (DN 6) is **GRANTED**. This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the reasons that follow, the Court will allow the retaliation claim to proceed against Defendant Atkin in his individual capacity and, as to the injunctive relief sought, to also proceed in his official capacity.  The Court will allow the retaliation claim to proceed against Defendant Ashbaughm in her official capacity as to the injunctive relief sought and will allow Plaintiff to amend his complaint to name this Defendant in her individual capacity.  All other claims and Defendants will be dismissed.

### I.  SUMMARY OF CLAIMS

In his original complaint, Plaintiff names five Defendants in this action:  (1) LaDonna Thompson, the former Commissioner of the Kentucky Department of Corrections (KDOC); (2) Aaron Smith, Warden, Kentucky State Reformatory (KSR); (3) Bob Atkin, "UA/Coordinator" at KSR;[1] (4) Teresa Turner, "UA/Coordinator" at KSR; and (5) Christina

---

[1] In an attached grievance filed by Plaintiff (DN 6-1, p. 4), he indicates that Defendant Atkin has left the DOC.

Bishop, a Lieutenant at KSR.  He sues each Defendant in both their official and individual capacities.  In his amended complaint, Plaintiff adds two additional Defendants:  (1) Julie Ashbaughm, a correctional officer (CO); and (2) Rodney Ballard, the present Commissioner of the KDOC.  He fails to state in the amended complaint the capacity in which he is suing these two additional Defendants.  Plaintiff raises three claims in his complaint and an additional fourth claim in his amended complaint.

Plaintiff's first claim arises from institutional disciplinary proceedings brought against him.  Plaintiff contends that the disciplinary proceedings resulted from him being set up by another inmate, and Plaintiff contends that he was denied a constitutional disciplinary hearing.  According to Plaintiff, on July 3, 2015,[2] as a result of receiving a note from another inmate containing a tip, CO Mewhinney and Sgt. Whitaker conducted a search of Plaintiff's cell.  The inmate who provided the note stated that he found the note on the floor.  As the note indicated, these officers found a "debt slip" on top of Plaintiff's cell door.  They also found an institutionally-rolled cigarette and an unknown white powder.

Plaintiff states that he immediately claimed he was set up by inmate Rothfuss.  According to Plaintiff, Plaintiff believes that inmate Rothfuss provided the note to CO Mewhinney because, according to Plaintiff, inmate Rothfuss days earlier threatened to get Plaintiff.  Plaintiff states that he also immediately requested a urinalysis and that the powder be tested.  CO Mewhinney described the inmate who gave him the note with the tip as being "a bald, white, 5'7 male," a description Plaintiff states matches inmate Rothfuss.  Prior to his disciplinary hearing, Plaintiff states that he filed a grievance alleging that the "space above/on top of a cell door was accessible to anyone from the out side of the cell."

---

[2] In his complaint, Plaintiff states the year as 2015 in some places and 2016 in other places.  However, the documents provided by Plaintiff regarding the disciplinary hearing give the year as 2015.  The Court will use the year 2015.

According to Plaintiff, he was charged with a "rule violation (Category 6-4 Possession of or promoting dangerous contraband (Cat. 6-4))."  Plaintiff states that prior to his disciplinary hearing, he "submitted 2 Request Forms to the disciplinary hearing officer [Defendant] Bishop." He states that therein he made "over a dozen requests."  Two of these requests, according to Plaintiff, were for a urinalysis and for the contraband items to be tested.  Plaintiff also states that he challenged "chain of custody," sought to "allow hand writing sample from his legal aide desk to compare with the letter on the debt slip," and argued that "he had no control over the area on top of his door and that it was accessible by anyone."  According to Plaintiff, Defendant Bishop denied all of Plaintiff's requests and arguments.

According to documents provided by Plaintiff, on July 15, 2015, a hearing was held and Plaintiff was found guilty of the charged disciplinary violation and given 45 days of disciplinary segregation.  Plaintiff states that he appealed the decision to the Warden, Defendant Smith.  On appeal, according to Plaintiff, he made nine arguments:  (1) that he was never in possession of the contraband since it was found over his cell door, an area accessible to the general population; (2) that he was denied the right to present documentary evidence when he was not allowed to retrieve a handwriting sample from his desk in the legal aid office so that he could attempt to show that inmate Rothfuss wrote the tip note and the debt sheet found above Plaintiff's cell; (3) that Defendant Bishop refused to review camera footage to determine if the note with the tip was provided by inmate Rothfuss; (4) that Defendant Bishop refused to review camera footage to determine if the "inmate who gave CO Mewhinney the note was lying about finding the note laying in front of the office door"; (5) that "the DOC failed to support its findings with reliable evidence when the dangerous contraband . . . was never tested" despite Plaintiff's requests to do so and the handwriting on the debt slip was not compared to inmate Rothfuss's handwriting;

3

(6) that Defendant Bishop refused Plaintiff's request to have CO Mewhinney identify the inmate who had given him the note; (7) that the chain of custody was broken which is shown by the evidence card stating that the evidence was found in dorm 11, but Plaintiff lived in dorm 5, and the chain of custody card listed "Tobacco and crushed pills" whereas the "Evidence Card listed Tobacco, Crushed Pills, and Money Slip"; (8) that Defendant Bishop refused to review the camera to see if the informant inmate really did find the note on the floor as he represented; and (9) that Defendant Bishop's decision was "influenced by an outside source" when he considered prior statements of Plaintiff which Plaintiff denies making.

Plaintiff's second claim is for "Retaliation and Distruction of Legal Papers/Documents." According to Plaintiff, on July 23, 2015, the day after he was released from segregation on the disciplinary charge, he "went to the academic Bldg. to request to UA Legal and Grievance Aide Coordinator [Defendant] Atkin, to print motions and other legal documents on the computer assign[ed] to Plaintiff when he was working as a Legal Aide prior to being found guilty on dangerous contraband offense." Plaintiff states that the documents he needed to have printed related to post conviction challenges.[3] According to Plaintiff, Defendant Atkin informed Plaintiff that he would have to pay for the copies and "an argument ensued." Plaintiff states that "[e]ventually [Defendant] Atkin instructed Plaintiff to give him a list of the documents he wanted printed," and Plaintiff gave Defendant Atkin "a rough list he drafted while in Atkin's office."

Plaintiff states that Defendant Atkin reviewed the list and made "notations on the list." Plaintiff states that the notations included: "15-20 min max" and "Hall This It." Plaintiff continues that he "was only allowed 10 minutes not 15-20 to complete the above task when

---

[3] Plaintiff more specifically states in his grievance regarding the matter that Defendant Atkin interfered with his right to obtain legal motions he had been working on to challenge his "sentence on Case 00-CR-00059 and challenge on Case 00-D-00083-001" (DN 6-1, p. 4).

[Defendant] Atkin entered the legal aide office and ordered Plaintiff to leave.  Another verbal altercation occurred wherein Plaintiff told [Defendant] Atkin he would file a claim in court against him for denying his records and hindering his ability to access the court."  According to Plaintiff, Defendant Atkin "threaten[ed] to delete Plaintiff files."  Plaintiff states that later that day he returned to the legal aid office to research and was told by Defendant Ashbaughm that he had to leave.  Plaintiff states that Defendant Ashbaughm indicated that she was following Defendant Atkins's orders.

Plaintiff states that he "immediately confronted" Defendant Atkin about being barred from the legal aid office and inquired as to why he was barred.  According to Plaintiff, Defendant Atkin stated that he did not need a reason and that it was not his problem that Plaintiff could not finish selecting the files for Defendant Atkin to review.  Plaintiff states that he was barred from the legal aid office from "July 23, 2015 thru/to around the first of Dec. 2015."  Defendant asserts it was Defendant Atkin who barred him from July 23, 2015, until the time he left KSR which was around October 21, 2015, and thereafter it was Defendant Ashbaughm who barred him.

According to Plaintiff, after several attempts at not being able to obtain copies of his documents, he sent a letter to Defendant Atkin on August 13, 2015, requesting that Plaintiff's documents be preserved "due to IT replacing all of the old computer with new ones in the Legal Aide Office."  Plaintiff states that he sent a letter to Defendant Smith on October 12, 2015, requesting Defendant Smith to "assure that [Plaintiff's] legal work be preserved."  On November 16, 2015, Deputy Warden Anna Valentine responded to Plaintiff's letter to Defendant Smith.  Therein, Plaintiff was informed that Defendant Turner "has agreed to coordinate with IT to look at the computer and see if there are any files.  If there are any files located, you will be

notified and given those copies." On April 26, 2016, Defendant Smith informed Plaintiff via

memorandum as follows:

> IT Supervisor Beatrice Hayes looked into this matter and was advised that the retrieval of the information requested was unsuccessful. The computers in the school were very old and the IT technicians were already in the process of deploying new machines when this request was made. I am sorry that we were unable to get this information to you.

According to Plaintiff, he filed a grievance on May 4, 2016, after he "was informed by

[Defendant] Smith that IT was unable to retrieve [his] files."

The third claim raised in the complaint involves cold showers. Plaintiff states that "[o]n

Oct 28, 2015, after requesting CO Tracey to submit a work order request to maintenance (which

I witnessed her fill out the form) several days earlier to fix the cold water issue in the showers, I

filed a grievance." The resolution was to place a work order for maintenance to get the problem

fixed. Plaintiff appealed the grievance all the way up to the Commissioner. On January 5, 2016,

the Commissioner's response indicated that "at all levels of the grievance, a work order was

generated to repair the hot water in the unit. The Warden directed that this issue be resolved and

the hot water be fixed in the unit. Information received at this office indicates it has been

repaired." Plaintiff states that as of March 3, 2016, this problem had not been fixed. He

contends that he "was not sentence[ed] to prison to chose between taking cold showers through

out the winter or forced to chose between cold showers and clean Hygiene."

In his complaint, Plaintiff asserts that his First, Fifth, Eighth, and Fourteenth Amendment

rights have been violated. He requests monetary and punitive damages, "recovery of [his] legal

work and no further retaliation." Plaintiff also seeks to have the "Cat C-4 disciplinary report be

dismissed and all references removed from [his] institutional/Correctional record." Additionally,

Plaintiff wants his "Honor status restored, award of lost wages, Restraining Order not to be shipped."

In his amended complaint, Plaintiff seeks to add a fourth claim against Defendant Turner for "Malfeasance, Misfeasance or Nonfeasance of her duty when she used her authority to deny [his] grievance of retaliation against her and the other parties/defendants of interest in Plaintiff's 1983 complaint now before this Court." Plaintiff continues by stating that Defendant Turner

> [a]bused her position of authority to deny Plaintiff of due process to exercise his right to grieve a wrongful act against him by state employees wherein, [Defendant] Turner's actions is a direct violation of section 1 and 2 of the Ky. Const. as well as the First, Fifth and Fourteenth Amendments of the U.S. Const. when she arbitrarly denied my grievance as non-grievable.

## II.  STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604.  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 90 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the district court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  ANALYSIS

### A.  Claims Against Defendant Ballard

Plaintiff names Rodney Ballard, the present Commissioner of the KDOC, as a Defendant in this action. As to Defendant Ballard, Plaintiff makes no allegations against him in his complaint. "It is axiomatic that a complaint under 42 U.S.C. § 1983 must show a causal connection between the named defendants and the alleged constitutional deprivation; the doctrine of *respondeat superior* has no application thereunder." *Cox v. Barksdale*, No. 86-5553, 1986 WL 18435, at *1 (6th Cir. Nov. 13, 1986) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *see also Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982) ("What is required [for a § 1983 action] is a causal connection between the misconduct complained of and

the official sued.").  "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"  *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *see also Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (affirming the dismissal of the action for failure to state a claim in part because "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights"); *LeMasters v. Fabian*, No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009) ("To state an actionable civil rights claim against a government official or entity, a complaint must include specific factual allegations showing how that particular party's own *personal* acts or omissions directly caused a violation of the plaintiff's constitutional rights.").

Having failed to allege any conduct on the part of Defendant Ballard that violates Plaintiff's rights, Defendant Ballard and the claims against him will be dismissed from this action.

### B.  Claims Against Defendant Thompson

Plaintiff names LaDonna Thompson, the former Commissioner of the KDOC, as a Defendant in this action.  As to Defendant Thompson, Plaintiff makes no allegations against her except apparently that she upheld the disciplinary actions against him and denied his grievances. A plaintiff cannot maintain a claim against a prison official based solely on his or her handling of appeals of grievances and disciplinary proceedings.  *See Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696 (M.D. Pa. 2015) (finding that the failure of prison officials to act favorably on plaintiff's grievances and appeals from disciplinary proceedings could not be found to be a constitutional violation).  "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003); *see also Grinter v. Knight*,

532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983.") (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); O*verholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. 2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure.").  A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances.  *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x at 86 (holding that defendants "cannot be subject to § 1983 liability simply because they may be denied [the plaintiff's] administrative grievances or failed to act based upon information contained in his grievances").  Thus, where the only allegation against a defendant relates to the denial/rejection of a grievance or affirmance of a disciplinary charge, a plaintiff fails to allege any personal involvement by the defendant in the alleged constitutional violation.

Having failed to allege any conduct on the part of Defendant Thompson that violates Plaintiff's constitutional rights, Defendant Thompson and the claims against her will be dismissed from this action.

### C.  Claims Against Defendant Turner

Plaintiff asserts a Fourth Amendment claim against Defendant Turner for "Malfeasance, Misfeasance or Nonfeasance of her duty when she used her authority to deny [Plaintiff's] grievance of retaliation against her and the other parties/defendants of interest in Plaintiff's 1983 complaint now before the Court."  Plaintiff further states that Defendant Turner used her

authority to "deny Plaintiff due process to exercise his right to grieve a wrongful action against him . . . ."

It is clear that prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002) ("A grievance appeal does not implicate the First Amendment right of access to the courts because there is no inherent constitutional right to an effective prison grievance procedure."); *LaFlame v. Montgomery Cty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (finding that plaintiff's allegation that the institution's grievance procedures were inadequate to redress his grievances did not violate the Due Process Clause and did not "give rise to a liberty interest protected by the Due Process Clause"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that "no constitutional right was violated by the defendants' failure, if any, to process all of the grievances [plaintiff] submitted for consideration"). Nor does state law create a liberty interest in the grievance procedures. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). Further, if the prison provides a grievance process, violations of its procedures or its ineffectiveness do not rise to the level of a federal constitutional right. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (stating that "there is no inherent constitutional right to an effective prison grievance procedure") (citing cases).

Further, as previously discussed, a plaintiff cannot maintain a claim against a prison official based solely on his or her handling of appeals of grievances and disciplinary proceedings.

11

*See Overholt v. Unibase Data Entry, Inc.*, 2000 WL 799760 at *3; *Lewis v. Wetzel*, 153 F. Supp. 3d at 696. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x at 841; *see also Grinter v. Knight*, 532 F.3d at 576 ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983.") (quoting *Shehee v. Luttrell*, 199 F.3d at 300).

"The general term 'malfeasance' means the wrongful or unjust doing of some act which the doer has no right to perform." *Bailey v. Commonwealth*, 790 S.W.2d 233, 235 (Ky. 1990). "However, the more specific term 'malfeasance in office' means the wrongful or unjust doing of some official act, which the doer, a public official, has no right to perform and has done so with gross negligence or evil intent." *Id.*

In Kentucky, malfeasance in office is a crime. *See* Ky. Rev. St. § 61.170. However, Plaintiff, a private citizen, cannot bring a criminal action. "It is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965). The Court does not have the power to direct that criminal charges be filed against Defendant Turner. *Peek v. Mitchell*, 419 F.2d 575, 577-78 (6th Cir. 1970); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972). Thus, to the extent that Plaintiff seeks criminal charges be brought against Defendant Turner, his claim must be dismissed.

If Plaintiff is referring to malfeasance in its generic form, meaning a wrongdoing, "[m]alfeasance, absent more, does not rise to the level of a constitutional violation." *Overturf v. Brewer*, No. CV 11-1856-PHX-GMS, 2013 WL 996652, at *1 n.2 (D. Ariz. Mar. 13, 2013). Nor would negligent behavior on the part of Defendant, even gross negligence, rise to the level of a constitutional violation. Such claims "do not give rise to a constitutional tort under Section 1983." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1067 (6th Cir. 1994).

Accordingly, Plaintiff's claims against Defendant Turner will be dismissed from this action.  Further, there being no remaining claims against her, Defendant Turner will be dismissed from this action.

### D.  Eleventh Amendment Immunity

Under the Eleventh Amendment to the U.S. Constitution,[4] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it.  *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-20 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).  The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states.  *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

The Eleventh Amendment similarly bars damages claims against state officials sued in their official capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *McCrary v. Ohio Dep't of Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees

---

[4] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."  *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

in their official capacities for damages barred by Eleventh Amendment immunity).  Thus, the

monetary claims against Defendants, who are all identified as employees of the Commonwealth

of Kentucky, are barred by Eleventh Amendment immunity.

Further, Defendants sued in their official capacities for monetary damages are not

considered "persons" subject to suit under § 1983.  *See Will v. Mich. Dep't of State Police*,

491 U.S. 58, 71 (1989) (concluding that a state, its agencies, and its officials sued in their official

capacities for monetary damages are not considered persons for the purpose of a § 1983 claim);

*Thomas v. Noder-Love*, No. 13-2495, 2015 WL 4385284, at *5 (6th Cir. July 17, 2015) ("It is

also well-settled that [Eleventh Amendment] . . . immunity applies to claims under § 1983,

meaning that states and state officials sued in their official capacity are not considered 'persons'

under § 1983 and, therefore, cannot be sued for money damages without the state's consent.").

Accordingly, the official-capacity claims seeking monetary damages will be dismissed

from this action.

### E.  Individual-Capacity Claims

### 1.  Fourteenth Amendment Due Process

Plaintiff alleges numerous constitutional violations associated with his prison disciplinary

hearing and review.  He attributes these alleged violations to Defendant Bishop and Defendant

Smith, in his role of administratively reviewing the hearing on appeal.  The alleged violations

include the following:  (1) that Plaintiff was never in possession of the contraband since it was

found over his cell door, an area accessible to the general population; (2) that Plaintiff was

denied the right to present documentary evidence when he was not allowed to retrieve a

handwriting sample from his desk; (3) that Defendant Bishop refused to review camera footage

to determine if the note with the tip was provided by inmate Rothfuss, the inmate Plaintiff asserts

had threatened to get him; (4) that Defendant Bishop refused to review camera footage to determine "if the inmate who gave CO Mewhinney the note was lying about finding the note laying in front of the office door"; (5) that the DOC failed to support its finding with reliable evidence since the contraband was never tested despite Plaintiff's requests to have it tested; (6) that Defendant Bishop refused Plaintiff's request to have CO Mewhinney identify the inmate who had given him the note with the tip; (7) that the evidence card showed the evidence was found in Dorm 11, but Plaintiff lived in Dorm 5, and the chain of custody card listed "Tobacco and crushed pills" whereas the "Evidence Card listed Tobacco, Crushed Pills, and Money Slip"; (8) that Defendant Bishop refused to review the camera to see if the inmate really did find the note with the tip; and (9) that Defendant Bishop's decision was "influenced by an outside source." As a result of being found guilty of the disciplinary charge, Plaintiff received 45 days disciplinary segregation, and it appears based on the relief he seeks, that he lost his job as a legal aide and lost his "honor status" which allowed him to have a single cell.

The Fourteenth Amendment prohibits any State from depriving "any person life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The point is straightforward: the Due Process Clause provides that certain substantive rights-life, liberty, and property-cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The first inquiry in a Fourteenth Amendment due process claim is whether the interest at stake is within the Fourteenth Amendment's protection. *Arnett v. Myers*, 281 F.3d 552, 564 (6th Cir. 2002); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.").

"Only after reaching a conclusion that the interest claimed is within that protection does this court consider the form and nature of the process that is due." *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002).

"In order to determine whether segregation of an inmate from the general prison population involves the deprivation of a state-created liberty interest protected by the due process clause, courts are to determine if the segregation imposes an 'atypical and significant' hardship on the inmate 'in relation to the ordinary incidents of prison life.'" *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (citing *Sandin v. Conner*, 515 U.S. 472, 483 (1995)).  "Generally, placement in disciplinary or administrative segregation does not constitute an atypical and significant hardship on the inmate." *Rodgers v. Johnson*, 56 F. App'x 633, 636 (6th Cir. 2002).  "[U]nder *Sandin* a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence . . . ."  *Id.*

Plaintiff does not allege that his placement in disciplinary segregation affected the duration of his sentence.  Thus, his allegation of 45-days disciplinary segregation fails to allege any interest protected by the constitutional guarantee of due process.  *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that a 61-day stay in administrative segregation was not atypical and significant); *Rodgers v. Johnson*, 56 F. App'x at 636 (finding that the prisoner's extended stay in administrative segregation did not give rise to a protected liberty interest); *Jones v. Baker*, 155 F.3d at 813 (finding that segregation for 30 months did not create a liberty interest violative of the Due Process Clause); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug. 11, 1999) (finding that neither eight months administrative segregation nor 14-days disciplinary segregation constituted an atypical and significant hardship on inmates); *Jackson v. Hopkins Cty. Det. Ctr.*, No. 4:12CV-P82-M,

16

2012 WL 5472024, at *6 (W.D. Ky. Nov. 9, 2012) (finding that "[p]laintiff has not stated a due process claim because freedom from placement in segregation is not a protected liberty interest as it does not 'impose atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'").

Plaintiff also alleges that he lost his job as a legal aide and his honor status that allowed him to be housed in a single bunk.  Double-bunking does not subject a prisoner to atypical and significant hardship in relation to the ordinary incidents of prison life.  *See McMahon v. Fischer*, 446 F. App'x 354, 356-57 (2d Cir. 2011) (finding that double bunking did not subject "the prisoner to atypical and significant hardship . . . in relation to the ordinary incidents of prison life"); *Bullock v. McGinnis*, 5 F. App'x 340, 341–42 (6th Cir. 2001) ("a prisoner has no inherent constitutional right to be confined in a particular prison or to be held in a specific security classification"); *Hodges v. Wilson*, No. 07-249, 2008 WL 5049742, at *2 (W.D. Pa. Nov. 25, 2008) ("[L]iving in a double-cell is an expected ordinary incident of prison life, [and] retaining single-cell status is not a protected liberty interest." (citing *Austin v. Chesney*, No. 93-4010, 1995 WL 498720, at *3 (E.D. Pa. Aug. 22, 1995)).  Likewise, a prisoner does not have a constitutional right to prison employment or a particular prison job, *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *see also Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006), and losing his job does not violate his due process rights.  *Bullock v. McGinnis*, 5 F. App'x at 342.

### 2.  Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct; and (3) "there is a causal connection between elements one and two-that is, the adverse action was motivated, at least in part, by the plaintiff's protected conduct." *Id.*

It appears that Plaintiff is asserting that he was working on "motions and other documents in relation to Post conviction challenges to Plaintiff's Cases . . . ," and he was retaliated against for trying to do so by Defendants Atkin and Ashbaughm when they prevented him from accessing his legal documents in the legal aid office and by Defendant Atkin, who Plaintiff claims destroyed his legal documents.

Upon review, the Court will allow the retaliation claim to proceed against Defendant Atkin in his individual capacity and, as to the injunctive relief sought, to also proceed in his official capacity. The Court will allow the retaliation claim to proceed against Defendant Ashbaughm in her official capacity as to the injunctive relief sought and will allow Plaintiff to amend his complaint to name this Defendant in her individual capacity, if he so chooses.

### 3. Destruction of Property

Plaintiff also appears to be alleging a claim regarding the destruction of his legal documents by Defendant Atkin. Further, as to Defendant Smith, Plaintiff alleges he failed to preserve Plaintiff's documents despite Plaintiff sending him a letter making this request. The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). In order to assert a claim for deprivation of property without due process pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the state post deprivation procedures are inadequate to remedy

the deprivation.  *Parratt v. Taylor*, 451 U.S. at 543-44; *see also Laubis v. Witt*, 597 F. App'x 827, 831 (6th Cir. 2015) ("[I]n order to proceed in federal court with a § 1983 claim for deprivation of property without due process, 'the plaintiff must attack the state's corrective procedure as well as the substantive wrong.'") (citation omitted).  The law of this circuit is in accord.  The Sixth Circuit held that "[i]n § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate."  *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983).  The Sixth Circuit has further found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*.  *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).  The same rationale applies to claims under the Fifth Amendment Takings Clause; that is, no taking has occurred absent a showing that available remedies have been pursued and have failed to provide adequate compensation.  *Hudson v. Palmer*, 468 U.S. at 539 (O'Connor, J., concurring).

> As explained by Justice O'Connor,
>
> [A] mere allegation of property deprivation does not by itself state a constitutional claim under either [the Due Process or Takings] Clause.  The Constitution requires the Government, if it deprives people of their property, to provide due process of law and to make just compensation for any takings.  The due process requirement means that Government must provide to the inmate the remedies it promised would be available.  Concomitantly, the just compensation requirement means that the remedies made available must adequately compensate for any takings that have occurred.  Thus, in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate.  When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result.

*Hudson v. Palmer*, 468 U.S. at 539 (citations omitted).  Plaintiff has failed to demonstrate an inadequacy of state remedies in the case at bar.

Accordingly, the claim regarding the destruction of Plaintiff's legal documents will be dismissed.

### 4. Cold Showers

Plaintiff contends that the hot water was broken in his wing of the dorm from about October 28, 2015, until around March 3, 2016, forcing him to have to "chose between cold showers and clean Hygiene." The only Defendant Plaintiff implicates in this alleged violation is Defendant Smith. Defendant Smith's role, according to Plaintiff, was to review the grievance Plaintiff filed about the lack of hot water in the shower in his dorm. Plaintiff states that Defendant Smith "turn[ed] the issue over to Deputy Warden Anna Valentine to ensure the Hot Water in C Wing Dorm 4 had been fixed."

The lack of hot water to shower during this approximately 3-month period does not constitute a constitutional violation. *See Hopkins v. Klindworth*, 556 F. App'x 497, 499 (7th Cir. 2014) ("The district court . . . properly dismissed Hopkins's claims relating to the absence of hot water in his cell. Prisoners do not have a constitutional right to hot water under the Eighth Amendment."); *Brooks v. Daniels*, No. 3:12CV-P446-S, 2012 WL 5866453, at *2 (W.D. Ky. Nov. 19, 2012) (finding that Brooks' claim that some cells had no hot water was not a constitutional violation); *Starnes v. Green Co. Sheriff's Dep't*, No. 2:08-CV-244, 2010 WL 2165368, at *3-5 (E.D. Tenn. May 26, 2010) ("The lack of hot water was a temporary inconvenience and is not something which society is unwilling to tolerate. After all, society does tolerate this condition since, even in the free world, hot water interruptions occur . . . .").

Further, a plaintiff cannot maintain a claim against a prison official based solely on his or her handling of appeals of grievances and disciplinary proceedings. *See Overholt v. Unibase Data Entry, Inc.*, 2000 WL 799760 at *3; *Lewis v. Wetzel*, 153 F. Supp. 3d at 696. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*,

20

73 F. App'x at 841; *see also Grinter v. Knight*, 532 F.3d at 576 ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983.") (quoting *Shehee v. Luttrell*, 199 F.3d at 300).

Accordingly, the claim regarding the lack of hot water in Plaintiff's dorm unit will be dismissed.

## IV.  ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1)  That Defendant Ballard and the claims against him are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(2)  That Defendant Thompson and the claims against her are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(3)  That Defendant Turner and the claims against her are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(4)  That the official-capacity claims seeking monetary relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2) since they seek monetary relief from Defendants who are immune from such relief;

(5)  That the Fourteenth Amendment due process claim is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(6)  There being no remaining claims against her, Defendant Bishop is **DISMISSED** from this action;

(7)  That the Fourteenth Amendment destruction of property claim is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(8)  That the Eighth Amendment conditions-of-confinement claim regarding cold showers is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and

(9)  There being no remaining claims against him, Defendant Smith is **DISMISSED** from this action.

The **Clerk of Court** is **DIRECTED** to remove LaDonna Thompson, Aaron Smith, Teresa Turner, Christina Bishop, and Rodney Ballard as Defendants from the docket of this action.

**IT IS FURTHER ORDERED** that the First Amendment retaliation claim against Defendant Atkin in his individual capacity and, as to the injunctive relief sought, in his official capacity will proceed, and the First Amendment retaliation claim against Defendant Ashbaughm in her official capacity as to the injunctive relief sought will proceed.

The **Clerk of Court** is **DIRECTED** to add Julie Ashbaughm as a Defendant in the docket of this action.

**IT IS FURTHER ORDERED** that **within 30 days** of entry of this Order Plaintiff may amend his complaint to name Defendant Ashbaughm in her individual capacity, if he so chooses.

The Court will enter a separate Scheduling Order directing service and governing the development of the continuing claims.  In permitting the claims to continue, the Court passes no judgment on the merits and ultimate outcome of the action.

Date:   November 28, 2016

**David J. Hale, Judge**
**United States District Court**

cc:   Plaintiff, *pro se*
      Defendants
4415.003

22